United States against Reginald Hopkins. Mr. Marchioli. Thank you, Your Honor. It pleases the court, Carlo Marchioli on behalf of the United States. I would like to reserve three minutes for rebuttal. Granted. Thank you, Your Honor. The Speedy Trial Act does not contain a ruse exception. That was pretty obvious from the look at it. In fact, yeah, that's our starting point. And in fact, I wanted to take you one step further if I could, Mr. Marchioli. And this may seem like a softball, but it also seemed an appropriate starting point along with the starting point that you gave us. Has there been a single precedential decision, one adopting the ruse exception and two applying it to dismiss criminal charges? I haven't found one, so I'm wondering. And based on the government's research, Your Honor, we haven't found one either. There are multiple courts like this court that have addressed the exception and just concluded that it did not have to recognize the exception in that case because based on the facts, there was no basis to apply it to dismiss charges. There are also some courts that have expressly rejected the exception. The D.C. Circuit is one. The Fourth Circuit in Iaquinta is one. And at least a non-precedential opinion in the Eleventh Circuit, Alvarado-Linares is another one. Thank you. I just want to make sure that I hadn't missed something. Thank you. I think that's exactly right, Judge Smith. And the text is pretty clear. And really, the key textual points are in both 3161B and 3161C, which contain the 30-day and 70-day clocks. They're both triggered by a charge or arrest for an offense. And 3172 clearly defines offense as a federal offense. On top of that, in 3161C, which is the 70-day clock, that clock is not triggered until the defendant appears in front of a judicial officer. And again, 3172 makes clear that the judicial officer is a federal judicial officer. This may be a quibble. You argue that the Supreme Court has cautioned lower courts not to alter clear statutory directives. But is what we have here in the exception that is urged upon us really an alteration or is it an addition to? And if so, does that matter? I think it's an addition to. One of the key reasons for that, if you look at 3162, which is the sanctions section, 3162A makes it clear that you don't even talk about dismissal of a charge with or without prejudice unless the person is charged in a complaint with an offense. So to take this case as an example, Mr. Hopkins was never charged in a federal complaint with a charge. The district court did here. I think that's in contravention, at least with 3162A. You cite to a Williams versus superintendent of Mahanoy SCI and one of our decisions from 2022. And it includes language that you quote, the judge made equitable rules cannot claim supremacy over statutory text. Fair enough. But has the Supreme Court ever instructed the lower courts in any case that you know of that a judicially crafted exception to the application of a the power of courts to do? To be honest, Judges, I'm having trouble right now thinking of a case saying expressly that, but I do think when you have a statutory scheme that is clear and that a federal offense and a federal arrest is required to trigger both of these clocks, that if you don't have that and an indictment or a charge is still dismissed, that's directly contrary to the statutory scheme. And in addition to that, as we explained in our brief, the other problem with the ruse exception is that it really makes a mess of other components of the statutory scheme. Excludable time is obviously a key issue under this speedy trial act. Excludable time could change presumably from case to case to case if we adopted the ruse exception. Could it not? I mean, depending upon when some action was taken, not merely arrest at a state level, but when some kind of collusion actually occurred during the course of that prosecution. I think that's right. It really depends on the facts of each individual case. And that's one reason why I think it's so difficult to apply the ruse exception, because you're looking at state proceedings, state proceedings that aren't required to comply, much less even contemplate the federal speedy trial act. And so it's going to be difficult to discern from the record of those state proceedings what exactly occurred when you're determining whether you can exclude time. The ends of justice exception under 3161H7A, I think, is the best example of that. And here, really what the parties were working with from the state court docket, the magisterial district judge docket, was really just the docket sheet itself and very short notations as to why certain continuances had occurred. Is there a legislative acquiescence argument to be made here in favor of the ruse exception? I think we've had this doctrine out there within the land since at least the earliest case I remember in 1993, the Cepeda Luna case, which recognized it. Congress has since that time amended the STA. What would you say to an argument that Congress has essentially over this long period, this 30-year period of time, somehow acquiesced in the existence of this exception? I don't think that interpretive rule applies here for a few reasons. First, I think to apply it, you need clear judicial decisions on the topic. And that certainly has not been the case. As I said at the outset in response to your question, I'm not aware of any precedential appellate decision that's actually recognized the exception and applied it to dismiss charges. So really what you're left with is dicta in a handful of circuit court decisions. So it's not a clear rule that Congress would be acquiescing with. In addition to that, I don't have all of the amendments to the Speedy Trial Act at hand right now. But I think the key provisions that we're talking about here, the 30-day clock, the 70-day clock, the definitions of offense and judicial officer, really haven't been amended since the statute was originally enacted. I think the 70-day clock had a minor revision in the 70s. It was additionally 60 days. You could add an additional 10. And then Congress combined the 60- and 10-day periods into the 70-day period in 1979. But Congress hasn't made changes to the act. And in doing so, I don't think the court can really read any acquiescence by Congress when it revisited the pertinent language. Does the exception penalize coordination between state and federal government? I think it absolutely does. Even just the idea that the exception might exist can chill what desired coordination between federal and state actors. And many decisions, Supreme Court decisions, circuit court decisions, recognize that that coordination is a fact of life and it's a desirable fact of life. There are numerous task forces set up across the country that purposely combine state and federal law enforcement so that law enforcement officers can combine efforts, share information, and decide where it's best to proceed with the investigation and prosecution. Here, we've made the point in our brief, we don't think there was any collusion, obviously, between state and federal officials. We don't think there was any confirmation by the U.S. Attorney's Office on the day of Mr. Hopkins' state arrest that there was going to be a federal indictment. But even if there was confirmation, that's much too marginal a difference in the government's view to allow the dismissal of a charge. If a court were to say, confirmation goes too far, but conversation, even belief that a federal indictment's going to be coming, that's okay, that's a very small difference between what the district court found here. If we agree with you that there is no ruse exception in the Speedy Trial Act, and if we, so if we agree with that, does that mean there's no remedy for the most egregious case? I know that your argument is that there was no collusion here, etc., but I want you to assume for a minute that there was really terrible collusion, terrible unfairness directed toward the arrestee because of the collusion between state and local officials. Is there no remedy for that, if we accept your argument? I think there could potentially be a remedy in the case of the most extremely egregious or outrageous government conduct. Well, the D.C. Circuit has said as much, didn't they? Due process clause. That the due process remedy, remedy pursuant to due process clause may still be there. That's correct, and the Supreme Court has recognized that the due process clause potentially creates a remedy for delayed charges. It's a very narrow remedy, and there's a high bar because principally the statute of limitations is a defendant's primary right against delayed charges, but if you do have egregious conduct, I think both the Supreme Court and this Court have described the standard under the due process clause as one where the defendant needs to show that the government intentionally acted with the desire to create a tactical advantage and that the defendant suffered actual prejudice. Well, and the D.C. Circuit case, and the name is escaping me right now, I'm sorry, but you know the case that I'm solving, two questions. First of all, as you know, so many of these cases have arisen out of the immigration context, so that what we have of the same sovereign acting through the Immigration Nationalization Service and subsequent then a federal prosecution. Are those cases helpful to us in any way? Should they inform our determinations to whether or not a ruse exception exists, or does the presence of dual sovereignty here really set those cases apart in a profound way such that they should not inform our decision? I think to take the second question first, Your Honor, I think there is a key difference. Dual sovereignty is the key difference there, and even if one were to accept that perhaps there could be a ruse exception in the immigration context, the dual sovereignty interests, the federalism interests, and dual sovereignty, obviously, the Supreme Court has recognized time and again, at least in the double jeopardy context, dual sovereignty is a real thing. That makes, when you're talking about state charges, very different from the immigration context. And again, this case is an example of that, because although the government tried to avoid a hearing in the first instance in this matter, once the we're going to call a state prosecutor to testify, and then even based on part of the district court's reasoning, because there is a lack of clarity about what the state magistrate judge did, that even calls to question whether a state judge should potentially need to testify in these situations. But since you've raised the procedures that was followed here, this case was dismissed pursuant to a motion to dismiss filed by the defendant, correct? That's correct. Why did the government go forward with the evidence at these hearings, both hearings? As opposed to the defendant, Your Honor? That's the only other person who could have done so. Certainly, the government, through the defendant, has the burden. That's what I thought. The burden of going forward and the burden of proof in this context, and I can't speak to conversations that might have occurred between defense counsel and the trial prosecutor in this case about how they would proceed, but Mr. Hopkins was going to testify, so I... Well, he did, but his testimony didn't implicate the issues that are before us in any way, did it? I don't believe so, Your Honor. I hate to say it, but it seemed to me to be a significant strategic mistake on the part of the government at that stage to forfeit to the opportunity to sit back and require the defense to make the case here that there was collusion. I think that's an incredibly fair point. At the same time, I think one reason the government might have just been prepared to present witnesses is knowing that perhaps defense is just going to subpoena the case agent, in this case, who is Officer Bates. But they didn't, did they? That's exactly right. In fact, there was no discovery at all requested, as far as I can tell, from the government by defense counsel in a situation here where there was supposedly underhanded sort of conversations and transactions going on between the U.S. Attorney's Office and, interestingly, not the Office of the Dauphin County District Attorney, but an officer who was both a TFO and a city of Harrisburg police officer, correct? That's correct, Your Honor. And I think based on the government's position that the defense has the burden, it probably would make the most sense for the defendant to actually have to present evidence, subpoena witnesses, request discovery. At the same time, like I mentioned, the government's first request was not even to hold a hearing. So at the point where the court's going to have a hearing, the prosecutor was concerned about giving the district court information that the prosecutor assumed the court might want. And you get a flavor of that in the district court's opinion, when at least implicitly, the court faults the U.S. Attorney's Office for not calling the original prosecutor in the case as a witness, which is, again, another problem we think that's inherent in the Ruse exception. Well, what about, wasn't there a problem here, as well, with what the jury concluded and apparently found the U.S. Attorney's Office, or specifically the Assistant U.S. Attorney, said to Officer Bates, that is, that I think the word was instructed? To file state charges. I'm sorry, Your Honor. To proceed with the prosecution? I don't think that that finding was supported by the record. That was what I was going to ask, yes. Officer Bates testified along the lines of, he had a conversation with the prosecutor. And that's all he said, isn't it? About the contact, that he had a conversation with the Assistant U.S. Attorney. I think the only thing he added, Officer Bates said, that ultimately it was his decision to obviously file state charges, but the prosecutor said, go ahead and file them. I think that's different from instructing or directing the officer to file the state charges. Well, as an old, with emphasis on old, old county district attorney, I can tell you what my response, no, I won't tell you what my response would have been if a federal prosecutor told me what to do with the state prosecution. It's just not done. I think that would have been a fair response. If there are no additional questions, then I can address the court again All right, thank you, Mr. Marchioli. We'll hear from Mr. Avom. Excuse me, may it please the court, John Avom on behalf of Reginald Hopkins, asking this court to adopt the Ruth's exception, and asking the court to accept Judge Wilson's findings, and that the and the Assistant United States Attorney colluded to circumvent Mr. Hopkins' statutory rights under the Speedy Trial Act, and to affirm her decision that the charges should be dismissed with prejudice. As I understand the gravamen of your complaint about what happened here, it's that your client was sort of put on ice, incarcerated under state law, just to give the federal authorities time, to sort of buy time to indict him federally. Is that right? In part it is. I think there are other reasons for it, but the answer is yes. And let's assume that happened. Let's assume that the state, the arrest and the state charge was entirely improper. As a matter of fact, it was done strictly for ulterior motives. Wouldn't the natural thing to be, for you to do, would be to go to the state authorities and say, this is an outrage. This whole thing's a sham, and my client should be released. Was there any sort of action or motion or complaint taken along those lines? I believe Mr. Hopkins is pursuing civil remedies, but I have not been involved in those. And I'm not relating to this court that something has been filed, but I'm aware of Mr. Hopkins' interest in doing so. But I forget it set aside civil remedies. I mean, if a state judge says that someone needs to be held for trial, like Mr. Hopkins, and quarter million dollars of bail imposed, and it's because the state judge who did that is misled or confused, and that there are misbehaviors occurring by the authorities who are seeking to have him incarcerated with a high bail, doesn't he have remedies? Doesn't he have the ability to go to that state court and say, I need to be released? He does. And my knowledge of Mr. Hopkins is that he did not meet his counsel until the first scheduled preliminary hearing, which was over 30 days after he was maybe more or consented to by Mr. Hopkins, correct? I think one was, that was three months into it. And the fourth one, the prosecutor said... He's been indicted. Right. And the fourth one, the prosecutor said he didn't object, basically. The defense attorney didn't object because he'd already been indicted by that time. All right. So speaking only for myself, you've got a tough road to hoe here because you're asking us, I think, consistent with what Judge Smith asked your friend on the other side, you're asking us to be the first court in the country to say that the Speedy Trial Act has pregnant within it, this ruse exception, correct? I am. I am. I recognize that. I know that nine different circuits have discussed it. It's come up even in several of this court's discussions. They've considered it, never applied it. I could find to actually grant dismissal of charges. All right. But there's a first time for everything. But you seem to be asking us to do this without any real textual support. What is your response to Mr. Marchioli's arguments about how atextual this would be if we were to follow your request? This would not be the only judicially created exception in laws. It's my understanding in patent law, there are judicially created exceptions. And under the Anti-Injunction Act, there's judicially created exceptions. There's qualified and judicial immunity, which I believe are judicially created exceptions. And under even criminal law, for 33 years, from 1962 to 1995, there was a judicially created exception to the crime of making false statements. And that exception said it didn't apply in judicial proceedings. Now, that was later changed by both the Supreme Court in 1995, and then Congress followed along and amended the Speedy Trial Act in 1996. All right. I think you gave a great answer. But isn't it also true that those judicially created exceptions occurred in an era where the Supreme Court was a lot less focused on the text of statutes than it has been as of late? I'm sorry that I can't answer. You know, I don't think I have enough knowledge to- Well, you know qualified immunity has been around since the Republic was founded. I mean, a lot of these immunities... My point is, would we be sticking our necks out quite a bit in order to create this exception? I don't think you would, because it's a very, very narrow exception. And I think it hasn't been- How does the statute work? There are parts of the statute that don't work with this exception, beginning with the presentation to a judicial officer. Judicial officer is defined in the statute as a magistrate judge or a United States district judge. It is. I concur. That's why this is a judicially created exception. And it's not in the text of the statute. And it says federal offense. It just doesn't say offense. It's defined as a federal offense. I recognize that. But without this exception, exactly what happened in this case can go forward. Well, that gets back to what I asked Mr. Marchioli. And I heard him say that, like the D.C. Circuit, your client wouldn't be without a remedy. It would just be a different remedy. It might be a due process remedy, but not a Speedy Trial Act remedy. Well, and so we're asking, as part of the recognition, that it be a Speedy Trial Act remedy. Let me ask you a textual, text-based question. The Act at Section 3161B provides, quote, any information or indictment charging an individual with the commission of an offense. And an offense is defined by 3172, as it's relevant here, as, quote, any federal criminal offense. An offense shall be filed within 30 days from the date on which such individual was arrested or served with a summons in connection with such charges. Clearly, the direction, the focus, the intent is that the offense is a criminal one. Shouldn't that language actually preclude our recognition of a ruse exception here? And I further recognize that offense is defined only as a federal offense and not offense in other aspects or under other sovereigns. So I recognize this is a circuits have recognized, and even this court has discussed it and raised it on its own in discussions of Speedy Trial Act context. I fully recognize that it's never been employed as the tool for a dismissal of charges. But in this particular case, it was a federal investigation with a federal officer, with a federal warrant, with a federal informant, a federal wiretap, all the evidence stayed in federal custody. He just had the authority to file state charges. They did purposely to keep him for an advantage for them. Is that, is all of that clear from the record? Do we know? I concede to you and probably agree with you that at least there was considerable federal participation on the part of Officer Bates. The record, however, here to me seems to be very unclear as to exactly what Bates' authority was, other than he was a member of this TFO. He was. Let me finish, please. And what his activities were on behalf of this task force, because he sought the search warrant, executed the search warrant. He did have contact with, as a member of the task force, with ATF officers. And with, at some point, for some purpose, whatever, however much the record demonstrates, with the assistant U.S. attorney who was then working. But the record seems to be very unclear to me just what his authority was, how far it went, what he had the authority to do. And I may, upon rebuttal, inquire a little bit of Mr. Marchioli on that, because it is, and perhaps this is a function of how the proceedings before the district judge were handled, a very glaring hole in the record. He testified at the first hearing that he developed Mr. Hopkins as a suspect based on some information. He then recruited. Well, that goes to part of my question, though, because you were referring to him repeatedly as he, this was federal, this was federal, this was federal. And it was not clear to me on the record whether this was exclusively a federal CI or whether it had been Bates' CI who he then used for federal purposes. That's not clear to me. He did first go to his resident charge with the ATF to receive permission to conduct this investigation. He then spoke with the chief deputy assistant United States attorney in the criminal division to get an assigned assistant district attorney. He then obtained federal wire taps. And he testified candidly that it was easier to get a federal wire tap than it was to get a state wire tap, which is in some part why he went in that direction. He then obtained a federal search warrant, conducted it with several officers, executed that warrant, both federal and state officers. And then he placed him in custody. And then he called the assistant United States attorney who at the first hearing, Bates testified, said, told him to file state charges. That's not the word, that's not the word that was used in the record, nor is it the finding of the district court. She used, I think, instructed or told, but I'm saying, but there's direct evidence. In fact, in fact, let me, let me take, I'm sorry, I'd like to go ahead and finish your, your, your sentence. And then, and he, and he wrote to the, and if there's any question about what happened in that phone call with the United, assistant United States attorney, he wrote an email to the night court judge, not the judge who's going to provide over the case, but he wrote to the night court judge, Judge Johnson, instead of Judge O'Leary. And he sent that, which is why it was not part of the court record that had been provided to me by prior counsel and said, he is being indicted. And that's, that's in the testimony here, the record that we have, he is being indicted. He, but there's nothing in the record that indicates anything specific about the conversation between Bates and the assistant U.S. attorney Bair, correct? There, there's, we know a conversation took, we know that there was some telephonic communication. We don't know. Let me, let me ask you another important point. I think about the record here, because we have the testimony of two separate hearings and we have the testimony that was proffered again by, by the government. In hearing number one of the assistant district attorney, isn't it pretty clear that it was the Dauphin County district attorney's office that was handling this prosecution certainly throughout its entire life until the prosecution was not brought. Not at all. Not at all. In fact, they didn't even know about it until at least. Is that what she testified to? She didn't know about it? Yes, you can. She, she was unaware. She assumed somebody would have been assigned and to go to a preliminary hearing, but at a preliminary hearing under state law, typically the affiant represents the commonwealth. And in this case, some counties will send an assistant district attorney, but at these. They have a policy in Dauphin County, according to her testimony of sending an assistant DA to every preliminary hearing. I understand that that was her testimony. She didn't say that there were district attorneys at the hearings that he was present at. And he also testified that he never saw a judge the first two times because they never got to his case. Because they were so backlogged. That this, that this DJ, as they used to be called, this magisterial district judge, had the biggest backlog, I think, and the greatest caseload of any within Dauphin County, or at least the city of Harrisburg. And as a consequence, would sometimes list an outrageous number of cases per hour, right? It was, I think, 50 per hour, which is- Never heard anything like that. And so Mr. Hopkins was not able to even see a judge to express his concerns. But the, I recognize ultimately that, that no circuit court has actually found and found, used the Roos exception to, to issue the remedy of a dismissal of charges. And that's, if you read all the cases, because almost universally, they haven't found collusion. It's present in this case. And that's what the judge found. So I'd ask you to leave her findings undisturbed. And because that's why this case is different than any of the other cases that have come before. Because there was never evidence of collusion. Or there was a California case where there was, the court said it was a close call. What's your definition of collusion? That I, it's a, an agreement that's not shared with, certainly the defendant or others, is a secret agreement in this particular situation to bypass the requirements of the Speedy Trial Act. Is this involved deceit? It can, but it doesn't have to. I mean, in this case, the agreement was between the Assistant United States Attorney and Officer Bates, who had the authority to file state charges. In fact, the Assistant United States, I'm sorry, the Assistant District Attorney who testified said she didn't even know about this case. And didn't, I'm sorry, she didn't know about any federal investigation until she got an email from the newly assigned Assistant United States Attorney telling her that he had been indicted. So there's nothing, there's certainly nothing then to suggest that the District Attorney's Office, the Commonwealth of Pennsylvania, was in any way involved, at least through the DA's office, in any kind of collusion. The DA's office was not involved, just the Harrisburg City Police Officer Bates. In your view, is the problem you've identified here endemic to the proliferation of federal task forces? I don't, I say no. I recognize it and I think they should work together and cooperate and coordinate. What's different in this case is they specifically cooperated to detain him knowing they're charging him federally and thwarting his statutory rights under the Speedy Trial Act. They did that purposely. That's what the judge found. So I don't think that thwarts in any way state and local officials, our local state and federal officials cooperating and working together. All right. But when that agreement was made under your theory, the federal grand jury had not indicted Hawkins yet, correct? Correct. Suppose that grand jury doesn't indict him. You're saying the state would have then just said, well, we're dismissing the charges? I mean, isn't that fanciful? The state would have surely gone forward. The only reason the state didn't go forward was because the feds had taken the ball. Well, I concur with that at that time. I don't know what the state would have done with the case had he not been indicted. Well, didn't Officer Bates testify that he regarded this as a viable state prosecution and continued to regard it as such and even alluded to the potential that something could happen to the expected and eventual indictment at the federal level? He did testify. And wouldn't it make sense if you're a state prosecutor, given the fact that you're not controlling that grand jury, you're not going to put that case to a federal grand jury. You have filed the charges that have kept someone detained pursuant to state charges to continue to keep those state charges alive and even to suggest to a magisterial district judge that bail be set pretty high because we know this guy knows about the prospect of an eventual federal indictment and he's a threat to be a runner. Doesn't all that make sense if you're a state prosecutor? It makes sense. He told the judge he is being federally indicted. I know that he doesn't control that under the facts of his case and based on the experience. There's no way that based on the facts that an indictment wouldn't follow from this particular matter. He was detained in state just to hold on to him, to delay the disclosure of discovery, to delay his own ability to defend the case, the federal case. So they thwarted his ability to gain any knowledge of the federal case by holding him and filing state charges against him. So thank you very much. Thank you. Thank you, Mr. Avon. Rebuttal, Mr. Markewicz. Thank you, Your Honor. I can start by first addressing Judge Smith's questions about Officer Bates's authority. I think at the state level he certainly had authority to bring a charge like this. ADA Varley testified about that. But once the case got in front of the MDJ, ADA Varley was also very clear that the case could not just be dismissed without the approval of the district attorney based on the type of conduct that was involved. It was a gun charge. The district attorney, based on violence in Harrisburg, did not want somebody who was not allowed to possess guns. He had to sign off on this. That's correct, Your Honor. No district attorney is going to want to leave that in the hands of an assistant. That's correct, Your Honor. And I think that fact, in addition to a couple others, makes this case actually very similar, contrary to what Mr. Avon had said, to precedential decisions in other circuits that have addressed the exception and then expressly declined to apply it. I'm talking about circuits that have said, we have valid detention. We have valid state charges. The Ruse exception does not apply. Does the Department of Justice have any kind of rules? Does the United States Attorney's about how the task forces of this kind are to operate and interact as between prosecutorial authorities? Because the potential for this happening, given the proliferation of these task forces, is, I don't have to tell you, considerable. The policy advantages of having coordination, not collusion, but coordination, having cooperation, certainly are very real and very justifiable. But we can easily see somebody going off the wrong ramp here, whether it be a state official, as the allegations are here, or a federal official, and we wind up exactly where we are right now. Is there any direction that you know of to federal prosecutors? To be candid, Your Honor, I'm not sure of any specific direction, but I can say that task forces certainly do have rules and procedures that govern them. I can also think that this would apply outside of this context, but federal prosecutors are directed when you feel like you have enough evidence that if the case were to go to trial, it'd be more likely than not that you would convince the jury, beyond a reasonable doubt, that then you should termination can't be made right away, or even there might be policy interests involved. This case was a drug investigation, primarily. Started as a drug investigation. That's correct. There was some thought that Mr. Hopkins might have access to firearms, but they tried multiple controlled buys. Only one was successful. Then there weren't drugs found in the residence. So I can just say, based on my experience in the U.S. Attorney's Office, if that's the result of the search warrant execution, it's not going to be obvious at that point that you would proceed with an indictment, or that the indictment would be approved by the U.S. Attorney or the management within the U.S. Attorney's Office, who ultimately needs to make the decision about whether an indictment can proceed. A line prosecutor can't make that call. And then, as Judge Hardiman mentioned, ultimately it has to go in front of the grand jury. It's a fiction to think of federal indictments ever a certainty. Certainly, in most, the vast majority of cases, when prosecutors present an indictment to a federal grand jury, they get a true bill, but it's not. It's been the subject of a considerable number of jokes, actually. A federal prosecutor could indict a ham sandwich line that has frequently been used. That's correct, Your Honor. I'm happy to answer any additional questions. One question. You referred to, when you were at the lectern before, policy considerations. Might that extend to, we touched on dual sovereignty, might that find its form, really, even in issues of prosecutorial discretion, especially at the state level here, if there were such an exception? Can you conceive of issues where prosecutorial discretion might be somehow interfered with? I think one way, and this wouldn't be the only way, but one way would be if there were a ruse exception and state prosecutors were concerned that, if a case goes federal, it might ultimately get dismissed years down the road because the record's not clear or testimony comes in in a strange way, that the federal case is dismissed, the state prosecutor would be more inclined to proceed with the state charges, duplicating efforts, even though the federal case might be the lead case, if it goes to conclusion, might result in a more significant sentence. So it could really have the effect of burdening state prosecutors' offices. I think that's one way it could have a negative effect. Thank you, Mr. Marchioli. Thank you, Mr. Abom. The court will take the matter under advisement. The next case is number 23-1963, Peter Mancuso v. MDG, USA. Mr. Blaise? Mr. Blaise, yes. May I reserve five minutes, Your Honor? Absolutely. Thank you. May it please the court, Greg Blaise for the appellant, MDG, USA, Inc. Your Honor,